SCHEURING, et al, Respondent, v. NORTHERN STATES POWER CO., Appellant

(294 N. W. 175.)

(File Nos. 8340 and 8341. Opinion filed October 8, 1940.)
Rehearing Denied February 3, 1941.

**Davenport & Evans**, of Sioux Falls, for Appellant.

**Tom Kirby**, of Sioux Falls, **Clair Roddewig**, of Minneapolis, Minn., and **John Burritt**, of Sioux Falls, for Respondents.

ROBERTS, J.   Plaintiffs in the two cases here for review were injured as a result of a collision between the

Chevrolet coach in which they were riding and a Ford pick-up of the defendant company driven by Walter Halverson, an employee of the defendant and engaged in its business at the time of the accident. It is alleged that the collision occurred at about five o'clock in the afternoon of August 31, 1938, on U. S. Highway No. 77, ten miles north of Beresford; that the Scheuring car was north bound and the defendant's truck south bound; that the collision was caused by the negligence of Halverson in that he was driving in excess of 45 miles an hour and that his view of the highway ahead of him was obstructed by a cloud of dust. The defendant company answered, interposing a general denial and pleading that the collision was caused by the negligence of Louis Scheuring, the driver of the Chevrolet car, and that plaintiffs were chargeable with such negligence. Plaintiffs moved at the commencement of the trial to dismiss the actions without prejudice as against defendant Halverson. These motions were granted. The actions, by agreement of the parties, were tried together. Defendant presented motions for directed verdicts on the grounds that no negligence had been established on the part of the driver of defendant's truck; that the evidence conclusively showed negligence on the part of the driver of the car in which plaintiffs were riding; that the evidence conclusively established the fact that plaintiffs and Louis Scheuring were engaged in a joint enterprise and therefore his negligence was imputable to them; and that plaintiffs having failed to exercise ordinary care for their own safety were contributorily negligent. The motions were denied and the jury returned separate verdicts, one for $1,500 in favor of plaintiff Edward Scheuring, and the other for $1,000 in favor of plaintiff Elizabeth Scheuring. Judgments were entered upon the verdicts and from these judgments the defendant has appealed, contending that its motions for directed verdicts should have been granted and that the trial court erred in instructing the jury.

■ There is some conflict in the evidence. In reviewing the evidence, we must in accordance with familiar rules accept that version of the evidence most favorable to the plaintiffs inasmuch as the jury found in their favor.

Louis and Edward Scheuring are clergymen, the former residing at Alma, Wisconsin, and the latter at Woodstock, Minnesota. The mother, Elizabeth Scheuring, resides at Iona, Minnesota. Rev. Louis Scheuring testified that in letters to his mother and brother he suggested a pleasure trip to the west coast; that he prepared a "rough outline of the trip"; that accompanied by his mother and brother he left Iona on August 16, driving through the Black Hills and Yellowstone Park to Portland, Oregon; that he made a change on the return trip in the route as planned, leaving U. S. Highway No. 30 at Columbus, Nebraska, and drove north to Yankton where he intended to purchase some vestry; that the expenses of operating the car on the trip were paid by him and that his mother and brother paid other expenses; that this was the general plan agreed upon before starting on the trip; and that he and his brother shared the burden of driving, but that he "directed the car."

Construction work was in progress on the highway at the scene of the accident and in that vicinity. This work started at the end of the pavement 5 or 6 miles north of Beresford on U. S. Highway No. 77 and extended northward a distance of 10 miles. The highway at this place was 40 feet wide and was practically level. Witnesses estimated the depth of the dust on the surface of the highway from 2 to 6 inches. A short distance south of the scene of the accident traffic detoured around a culvert which was under construction. A road maintainer was in operation at the time of the collision traveling south at a distance of approximately 1,000 feet north of the culvert. There were two windrows of dirt extending along the highway between the culvert and the road maintainer. The larger windrow was in the approximate center of the highway and the other was approximately half way between the center windrow and the east side of the highway. The maintainer was moving the east windrow to the center of the grade. The center windrow was 12 to 17 inches high and the east one was about a foot high. According to the evidence cars traveling on this highway "kicked up" considerable dust. There was

a slight breeze, according to the testimony of witnesses for the plaintiff, carrying the dust to the west side of the road.

Rev. Louis Scheuring was driving at the time of the accident. Testifying with reference to the accident, he said that after reaching the new grade they followed another car which detoured around the culvert hereinbefore mentioned and traveled to the west of the center windrow; that he also drove to the west of this windrow "but as close to it as possible" and could at all times see the ridge of dirt; that he could see the car ahead at all times "until just about a second or so before the accident"; that when he last saw this car, it was still on the west side of the center windrow; that he saw another car coming from the north "almost instantaneously" with the accident; that this car was "just in front" and "a little to the left" and was 10 to 15 feet away when he traveling between 20 to 25 miles per hour first saw it; and that the two cars were in a cloud of dust. On cross-examination this witness testified:

"Q. You knew that was a heavily traveled road? A. Yes.

"Q. And it was the main artery of traffic between Sioux Falls and Sioux City, didn't you? A. Yes.

"Q. And, from your driving experience on it you knew cars were passing every few seconds, didn't you? A. Yes.

"Q. And you said that, up to about the moment of the accident, there wasn't much dust? A. It was getting thicker.

"Q. But not enough to stop you from seeing? A. Toward the right side I could see plainly.

"Q. How about the left hand side where the car traveled south in this column of cars or traffic? Could you see there? A. It was thicker on the left hand side than on the right.

"Q. You say you never saw the other car until it was about 15 feet from you? A. That's right.

"Q. In what direction was it headed then? A. It seemed to be headed right toward me.

"Q. You think it was cutting over towards you? A. Yes.

"Q. Then you think at that time that it was pointed toward the south east? A. Well, mostly south, just a little east.

"Q. And only 15 feet from you?   A. Yes.

"Q. And you hadn't seen a thing of that car before that? A. No."

Rev. Edward Scheuring testified that at the time of the accident he was riding in the rear seat; that he did not recall turning off the highway to detour around the culvert; that he was reading, as he recalls, at the time of the accident; and that he was "paying no attention at all to the driving." Mrs. Scheuring was riding in the front seat.   She testified that she did not see defendant's truck before the accident; that she recalled a conversation with the driver concerning the dust on the highways, but did not observe that they were traveling on the left hand side of the grade.

Walter Halverson testified that he slowed down to "maybe around 25 miles" per hour after he passed the maintainer, and there was no direct testimony contradicting this statement.   He further testified that the dust was blowing eastward; that he was not "bothered with dust in front" of him, but that the dust was "bad" to the left; that he saw a car approaching from the south between the windrows of dirt; that when he was "side by side with this car" he saw another car approaching from the south; that this "car came cornerwise out of the dust cloud over" to his side of the road; and that it was 15 or 20 feet from him when he first saw it traveling diagonally to the northwest.

Walter Halverson was accompanied by Orville Heisler, a hitchhiker, who testified that the car which preceded the Scheuring car "kicked up a lot of dust"; that this car was traveling between the windrows of dirt; that "just a second after the first car passed" it was dusty and another car came diagonally to the northwest; and that it came from the dust behind the first car.   On cross-examination this witness testified:

"Q. As you passed that first car, you were in some dust, weren't you?   A. Yes.

"Q. You think you were closer to the edge of the dirt than the side of the road?   A. Yes.

"Q. And you were in a cloud of dust at the time after the first car went by?   A. Yes.

"Q. And how far could you see when you first ran into that dust?  A. Well, there wasn't time to see; that car hit right then, it seemed like.

"Q. And was there any time after you passed the rear end of that first car that you couldn't see?  A. Well, you couldn't see on that side.  If I had been looking over there I could.

"Q. Which way could you have seen?  A. To my right."

██ Defendant insists that the evidence was insufficient to establish any of the grounds of negligence alleged in the complaint, and that the evidence was such as to require a finding that the driver of the car in which plaintiffs were riding was guilty of contributory negligence as a matter of law in driving on the wrong side of the highway and in failing so to drive his car that he could stop within the range of his vision.  The negligence of the driver of the Scheuring car would not excuse the concurring negligence of the driver of defendant's truck insofar as liability to plaintiffs is concerned, unless plaintiff's had some control or authority over the operation of the vehicle. Lapp v. J. Laueson & Co., 67 S. D. 411, 293 N. W. 536.  For the purposes of this discussion, we may assume that the driver of the Scheuring car was shown to have been negligent.  The question for determination is whether there was sufficient evidence of negligence on the part of the driver of defendant's truck to justify submission to the jury.  The uncontradicted evidence is that the highway at the scene of the accident and in that vicinity was under construction; that a windrow of dirt extended along the center of the highway; that a road maintainer proceeding south on the east side of the highway was moving another windrow of dirt to the center of the grade; and that there were workmen in the area.  Defendant's driver admitted that he observed the approach of the car which the plaintiffs were following, and witnesses for plaintiff testified that this car traveled to the west of the center windrow.  There were conditions tending to show that it was necessary for cars traveling north to drive on the west half of the grade, and the driver of defendant's truck having knowledge of these conditions was required to

proceed with caution to avoid a collision. There was evidence that he entered a cloud of dust raised by a third car, and the truck driven by him was turned somewhat to the left at the time of the impact. He admitted that his view was obscured by the cloud of dust. We think that there was sufficient evidence of negligence to take the case to the jury.

■■ We will next consider the contention that the undisputed evidence disclosed that the parties were engaged in a joint enterprise and for that reason the negligence of the driver of the car in which plaintiffs were riding was imputable to them. To constitute a joint enterprise there must be both a community of interest in the object and purpose of the undertaking in which the automobile is being driven and an equal right in the occupants to direct each other in relation to the management of the vehicle. Zeigler v. Ryan, 65 S. D. 110, 271 N. W. 767. In Farthing v. Hepinstall, 243 Mich. 380, 220 N. W. 708, 709, the court said: "To constitute a joint enterprise between a passenger and the driver of an automobile, within the meaning of the law of negligence, there must be such a community of interest in its operation as to give each an equal right of control. There must be a common responsibility for its negligent operation, and there can be no common responsibility unless there is a common right of control. It must be held that the driver is acting as the agent of the other members of the enterprise. The rule of joint enterprise in negligence cases is founded on the law of principal and agent. On no other theory could the negligence of the driver be imputable to a passenger. Being parties to the same enterprise, they are assumed to have common control and possession of the machine. Otherwise, each could not be charged with the negligence of the other." A typical instance of joint enterprise is afforded by the situation where two or more hire a vehicle jointly for their common purpose and agree that one of their number shall drive it; the circumstances are such that the vehicle is in their common possession. Coleman v. Bent, 100 Conn. 527, 124 A. 224. The fact that the owner in the instant case contributed the use of his car and paid

the expenses of operation and the further fact, which he testified to, that he departed from the route as planned, were circumstances to be considered by the jury in determining whether the owner reserved possession and right to control his car. Plaintiffs agreed to defray the personal expenses of the owner, but this was not necessarily inconsistent with retention of control by the owner. The trial court could not say as a matter of law that a joint enterprise was established.

Plaintiffs were responsible, of course, for their own actions and if they failed to exercise the requisite care for their own safety and such failure contributed to their injuries, they cannot recover, notwithstanding they were not chargeable with the negligence of the driver. Defendant insists that plaintiffs did not exercise due care for their own safety and were contributorily negligent as a matter of law. Plaintiff Edward Scheuring admitted that he was reading and did not see defendant's truck approaching. Mrs. Scheuring, sitting in the front seat, was not watching the road and did not see defendant's truck before the accident. It is contended that if they had given heed to the driving of the car they would have observed the position of the car on the road and the conditions requiring additional precaution for their own safety. The care required of a passenger in an automobile driven by another is that required of an ordinarily prudent or reasonable person under like circumstances. The law fixes no different standard for the passenger than for the driver. While the standard of duty is the same, the conduct to comply with that duty is generally different. As stated in Clarke v. Connecticut County, 83 Conn. 219, 76 A. 523, 525: "What conduct on the passenger's part is necessary to comply with this duty must depend upon all the circumstances one of which is that he is merely a passenger having no control over the management of the vehicle in which he is being transported." This court in Simmons v. Leighton, 60 S. D. 524, 244 N. W. 883, held that plaintiff who was a guest riding in the front seat of an automobile involved in a collision, was not charged with the same strict legal duty of being watchful as was the driver. On the other

hand, it is the rule that a person riding in an automobile owes the duty to warn the driver of approaching danger under certain circumstances. Annotations: 18 A.L.R. 309, 22 A.L.R. 1294, 41 A.L.R. 767, 47 A.L.R. 293, 63 A.L.R. 1432, and 90 A.L.R. 984. But a passenger is not required as a matter of law to keep a lookout for causes which might occasion injury, including approaching vehicles. In re Hill's Estate, 202 Iowa 1038, 208 N. W. 334, 210 N. W. 241; Kilpatrick v. Philadelphia Rapid Transit Co., 290 Pa. 288, 138 A. 830. A passenger having no control over the management of the car may rely upon the driver to discharge that duty.

Defendant in support of its contention cites Ulrickson v. Chicago, M., St. P. & P. R. Co., 64 S. D. 476, 268 N. W. 369, in which a guest riding in a car driven by her husband was held guilty of contributory negligence as a matter of law because she failed to protest when her husband continued to drive toward a railroad crossing with which she was familiar although their vision in the direction of an approaching train was blinded by the glare of the sun. This, a railroad crossing case, is distinguishable. Bak v. Walberg, 65 S. D. 292, 273 N. W. 381. In Leclair v. Boudreau, 101 Vt. 270, 143 A. 401, 403, 63 A.L.R. 1427, wherein the same contention was made the court said: "Railroad trains and trolley cars run on fixed rails, and when a collision impends cannot turn aside to avert it, while vehicles on the highway in like circumstances can turn out for each other. This one circumstance is enough to affect the rule in its application to collision cases." See, also, Hunsavage v. Rocek, 74 Colo. 163, 219 P. 1080.

The circumstances of a particular case may be so clear as to fix upon the passenger the duty to give warning, as, for instance, the rate of speed or the manner of driving may be such as to attract the attention of the passenger. Cf. Miller v. Stevens, 63 S. D. 10, 256 N. W. 152. But we cannot hold as a matter of law that because of the manner of driving or of their surroundings the plaintiffs must have realized that danger was imminent.

The remaining errors assigned relate to the giving of

instructions. Discussion of these errors would involve a repetition of what has been stated in this opinion. We have examined the instructions given, of which defendant complains, and the instructions requested and find no prejudicial error.

The judgments appealed from are affirmed.

All the Judges concur.