## KUPER v. BETZER.
### No. 11678.

Circuit Court of Appeals, Eighth Circuit.

Dec. 3, 1940.

T. R. Johnson, of Sioux Falls, S. D., for appellant.

Holton Davenport, of Sioux Falls, S. D. (Ellsworth E. Evans, of Sioux Falls, S. D., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

This was a suit for damages for personal injuries alleged to have been caused by the negligence of appellee, defendant below. The trial judge directed a verdict for defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law. Whether there was error in this direction is the principal question presented.

The plaintiff, appellant here, was injured in a collision between the automobile, a Ford, in which, in the rear seat between two other persons, she was riding, and an automobile, a Chevrolet, driven by defendant. The collision occurred in the City of De-Smet, South Dakota, at the intersection in that city of State Highway No. 25, running

north and south, and U. S. Highway No. 14, running east and west. The date was July 10, 1938, the time of day, 9:30 a. m. At the instant of collision the Ford was proceeding north on Highway 25, the Chevrolet was proceeding west on Highway 14.

The plaintiff in her petition charged that defendant was negligently driving his automobile at an excessive rate of speed. There was evidence that he was driving at a speed of at least fifty miles an hour. It was conceded by appellee at the oral argument in this court that there was a sufficient showing of defendant's negligence to make an issue as to that matter for the jury.

Since the learned trial judge directed a verdict for defendant for that, as he thought, contributory negligence conclusively was shown, the facts in that connection must be stated fully, with all conflicts in the testimony resolved in plaintiff's favor. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Nielsen v. Richman, 8 Cir., 114 F.2d 343. So resolving conflicts, the evidence was as follows. The driver of the Ford, in which plaintiff was riding, before he entered the intersection, brought his automobile to a full stop. The front wheels of the Ford were then in line with a stop sign in the parking at the east side of Highway 25 and approximately 20 feet south of a line projected along the south line of the pavement on Highway 14 and approximately 30 feet south of the center of the intersection. The collision occurred in the northeast quarter of the intersection when the Ford was just across the center line. When the Ford had stopped at the stop sign not only the driver, but also the plaintiff, looked to the east along Highway 14. Neither saw defendant's automobile approaching. It was not then in sight. The driver of the Ford then started across the intersection, increasing his speed as he proceeded to between 5 and 10 miles an hour.

We set out now in haec verba a part of the testimony of the driver:

"Q. What did you do when you saw the stop sign? A. I stopped.

"Q. Did you bring the car to a full stop? A. Completely stopped.

"Q. Did you look then to Highway 14? A. I looked both ways.

"Q. Did you see any car approaching? A. Not a car.

"Q. Well, what did you do then? A. I put it in second and started across.

"Q. Whereabouts were you on this intersection when you noticed the defendant's car for the first time? A. I was just across the center of the pavement, across the highway, just across the yellow line.

"Q. Where was he coming from? A. He was coming from the east and just came that quick.

"Q. Have you any way of stating approximately how far away he was when you first saw him? A. Just about on me that quick I could not tell you exactly."

We set out also certain of the testimony of the plaintiff. The first question set out is with reference to the stop sign immediately south of Highway 14 and to the conduct of the driver.

"Q. Did he stop? A. Yes, he did.

"Q. Did he come to a full stop? A. Yes.

"Q. Did you look to the right on Highway 14? A. Yes.

"Q. Do you know, roughly, how far you can see to the right or to the east on Highway 14 at that point? A. Well, I could see some distance.

"Q. Did you see any car coming? A. Well, I didn't see the car until just right after we started out, and it was not more than just a half second it was upon us. It just hit us that quick.

"Q. You were out in the intersection before you saw the other car? A. Yes.

"Q. Do you have any idea approximately how far away it was when you saw it the first time? A. No, I could not say just how far it was away. Because I no more than seen it than it was upon us just that quick."

The plaintiff further testified:

"Q. Can you tell the jury when you stopped at the stop sign at the southeast corner of the intersection of Highways 25 and 14, when you looked to the east on Highway 14, about how far you could see? A. That is when I could see 200 feet.

"Q. Now, when you got into the intersection can you tell the jury approximately how far away the Betzer car was when you saw it for the first time? A. It was just a short distance.

"Q. Can you tell that in feet? A. I should say about thirty feet.

"Q. Was it coming fast? A. Yes. It was such a sort distance and it was coming so fast I could not say exactly 30 feet, but

the car came so terrible fast I could not tell the distance exactly."

On cross-examination the plaintiff testified:

"Q. And you noticed at the stop sign, as you have sworn here, that all you could see was about 200 feet. You noticed that, did you? A. Yes.

"Q. So, of course, as you went on to the intersection you kept on looking to make sure that nothing would be coming, didn't you? A. Yes.

"Q. As you entered the intersection you, of course, looked again. That is right? A. Yes.

"Q. And you were not able to see anything then? A. No.

"Q. That is, when you got right up to the edge of the intersection and when you looked to the east, there was no car in sight at that time? A. No.

"Q. You looked carefully, did you? A. Yes.

"Q. And you knew that if there was a car coming, that the thing to do was to warn the driver, didn't you? A. Yes.

"Q. And if you had seen a car coming you would have warned the driver? A. Yes."

### Effect of Physical Facts.

1. Obviously if this testimony of the plaintiff is accepted, and it must be unless in a situation we shall presently discuss, the plaintiff not only is not shown to be guilty of contributory negligence, but her innocence of contributory negligence is clear. The contributory negligence charged against her was that she should have seen the approaching car and should have warned the driver. The uttermost limit of her duty, however, was to warn the driver if she saw a car approaching—but, although she looked as the Ford entered the intersection, she did not see the approaching car until it was within 30 feet.

The jury of course might not have believed the plaintiff's nor the driver's testimony. Very probably the trial judge did not believe all their testimony and he had every opportunity to observe the witnesses and to apply to their testimony the established tests. Even a reading of the cold record leaves us in great doubt as to whether the plaintiff's or the driver's testimony, in the excerpts we have set out, in all respects is true. But neither this court nor the court below are the judges of the credibility of the witnesses. That function is the jury's in a case tried to a jury. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434. This court and the trial court ordinarily must accept as true the testimony even of a veritable Munchausen in the uttermost stretches of his imaginings.

Of course the learned trial judge had the rule we just have stated fully in mind. We assume he acted pursuant to an exception to the rule. (We say again as often we have said before that we welcome explanations by trial judges of their important rulings, explanations dictated into the record at the time rulings are made or embodied in a memorandum subsequently filed: such explanations frequently supply reasons of sufficient weight to turn the scale when doubtful points are argued in this court.) We assume the trial judge regarded the physical facts as inconsistent with and negativing the oral testimony and that he was actuated by the principle that, in ruling a motion for a directed verdict, the court should disregard inherently impossible testimony such as testimony "in conflict with indisputable physical facts." 64 Corpus Juris 322; Budaj v. Connecticut Co., 108 Conn. 474, 143 A. 527; Oliver v. Union Transfer Co., 17 Tenn.App. 694, 71 S.W.2d 478; Hessler v. Bellamy, 128 Neb. 571, 259 N.W. 514; Behr v. Duling, 128 Neb. 860, 260 N.W. 281. Perhaps no better illustrations of the applicability of this principle can be found than in the three cases cited by appellee to this point.

One of the three cases is Pigeon v. Massachusetts Northeastern Street Railway Co., 230 Mass. 392, 119 N.E. 762, 764, decided by the Supreme Judicial Court of Massachusetts May 29, 1918. It was ruled there that as a matter of law Pigeon and those riding with him could not recover because of their contributory negligence. Pigeon's automobile was struck by a street car. The automobile just had started "from a stationary position on low speed" and was "moving slowly." It could have been stopped "within a distance of 3 feet." The court said that: "Notwithstanding the oral testimony to the effect that each looked for the car in the direction from which it came, the fact of the accident demonstrates that it was within the plain field of vision of each one for a sufficient period of time to have enabled Pigeon to stop his automobile if any of them had seen and spoken of the danger."

The facts in Mertens v. Lake Shore Yellow Cab & Transfer Co., 195 Wis. 646, 218

N.W. 85, decided by the Supreme Court of Wisconsin May 8, 1928, were these: Mertens, a pedestrian, started to cross a street. He had a clear vision down the street for more than 250 feet. He said he looked and saw nothing. When he had proceeded 12 feet into the street he was struck by a Yellow cab. Said the Supreme Court: "Under such circumstances, a person is presumed not to have looked, or to have heedlessly submitted himself to the danger. He is not permitted to say that he looked, when, if he had looked, he must have seen that which was in plain sight."

Pettera v. Collins, 203 Wis. 81, 233 N.W. 545, decided by the Supreme Court of Wisconsin December 9, 1930, presented these facts. Pettera's automobile collided with Collins' automobile at a highway intersection. When Pettera entered upon the traveled portion of the intersecting highway he could see along it 62 rods. He testified he looked and saw nothing and that when he had proceeded scarcely more than 30 feet his automobile was struck by the automobile driven by defendant. The Supreme Court said, quoting its earlier opinion in Mertens v. Lake Shore Y. C. & T. Co., 195 Wis. 646-648, 218 N.W. 85: "He is not permitted to say that he looked, when, if he had looked, he must have seen that which was in plain sight."

These cases illustrate the reasonable rule that, if the indisputable physical facts are inconsistent with oral testimony, it is the duty of the trial court to disregard that testimony, in determining whether a question shall be submitted to the jury. But what indisputable physical facts are shown by the record here? There are only two which are material: (a) The fact of the collision in the northeast quarter of the intersection, just over the center line, is one. (b) The fact that after a person, going north, has passed the south line of Highway 14 he has a clear view eastward along that highway for more than 500 feet is the second. From these two physical facts this conclusion necessarily follows: One looking east from an automobile moving north at the rate of ten miles an hour toward the point of collision, if he had looked, *must* have seen an automobile moving west on the intersecting street at a speed of fifty miles an hour. When the northbound automobile was ten feet from the point of collision the westbound automobile was fifty feet from the point of collision and in plain sight. When the northbound automobile was twenty feet from the point of collision the westbound automobile was 100 feet from the point of collision and in plain sight *to one looking 100 feet to the east*. When the northbound automobile was thirty feet from the point of collision the westbound automobile was 150 feet from the point of collision and in plain sight *to one looking 150 feet to the east*. This conclusion also follows: one looking east from an automobile moving north at the rate of five miles an hour toward the point of collision *must* have seen an automobile moving west on the intersecting street at a speed of 50 miles an hour. When the northbound automobile was 10 feet from the point of collision the westbound automobile was 100 feet from the point of collision and in plain sight. When the northbound automobile was 20 feet from the point of collision the westbound automobile was 200 feet from the point of collision and in plain sight *to one looking 200 feet to the east*. When the northbound automobile was 30 feet from the point of collision the westbound automobile was 300 feet from the point of collision and in plain sight *to one looking 300 feet to the east*.

Certainly now the duty of the plaintiff, which was to use ordinary care for her own safety, did not require her to look to the east either at a point 30 feet from the point of collision or at a point 20 feet from the point of collision or at a point 10 feet from the point of collision. She was not the driver. She could rely on the driver and was not required to look at all. In re Hill's Estate, 202 Iowa 1038, 208 N.W. 334, 210 N.W. 241; Kilpatrick v. Philadelphia Transit Co., 290 Pa. 288, 138 A. 830; Scheuring v. Northern States Power Co., S.D., 294 N.W. 175, Decided October 8, 1940. She had looked from the point where the car stopped when she could see 200 feet eastward and no westward automobile was in sight. It is said, however, that since she did look she will not be heard to say that ordinary care did not require her to look. Probably that is sound. Certainly, however, her statement, which now is used against her, is to be interpreted (if it will support two meanings) in her favor. The statement to which appellee particularly points is this:

"Q. * * * when you got right up to the edge of the intersection and when you looked to the east, there was no car in sight at that time? A. No."

If now we hold the plaintiff to this answer, which was put into her mouth by a most skilful cross-examiner, we have her

saying that at the edge of the intersection, which was approximately 30 feet from the point of collision, she looked east and saw nothing. The westbound automobile was then 300 feet from the point of collision, if the Ford was traveling 5 miles an hour, it was 150 feet from the point of collision if the Ford was traveling 10 miles an hour. If the plaintiff had turned her head at right angles and looked eastward down the intersecting street as far as she could see she must have seen the westbound automobile approaching and would not be heard to say that she did not see it. But when did she say that, at the edge of the intersection, she looked to the east in any such manner or so as to see any such distance? There was no such testimony. She testified only that she looked "to the east." She would have looked "to the east" if her vision had taken in only a distance of 100 feet to the east. It would scarcely have been normal for one sitting between two others in the rear seat of an automobile to have turned his head at right angles to look down an intersecting street. At any rate this plaintiff did not testify that she did that. The testimony she actually gave, interpreted in her favor so far as it reasonably may be, is entirely consistent with the physical facts. If so, then we have the plaintiff's testimony, that she looked (which was more than ordinary care required her to do) and that she saw nothing, because there was nothing in sight. If that were true, she was not guilty of contributory negligence.

If Physical Facts Overcome Testimony.

■ 2. If, however, we say the plaintiff's testimony is contradicted by the physical facts, what then do we have? Plaintiff testified (a) that she looked and (b) saw nothing. If doubts are resolved in plaintiff's favor, it is not element (b) that must be rejected but element (a). We shall say, the plaintiff did not look, her testimony to the contrary notwithstanding. But she was under no duty to look. Her failure to look, therefore, could not constitute contributory negligence.

If we do not resolve doubts in plaintiff's favor, if we say it is element (b) in her testimony that shall be rejected, what then do we have? She looked and saw and did not warn. But do such facts conclusively show contributory negligence?

If the automobile in which plaintiff was riding was moving ten miles an hour it was moving 14.6 feet per second. On this hypothesis, in two seconds after she saw the westbound automobile the collision occurred. Is it not reasonable to say that one in plaintiff's situation, even if we attribute to that person the calmness of a scientist in his laboratory, would, after he discovered the impending danger, first seek to discover whether the driver also was aware of it. For if the driver was aware of the danger the worst thing anyone could do would be to startle him with an outcry. And when he had discovered, if he did discover it, that the driver was oblivious to his danger, then the passenger must decide whether an outcry would have the effect of causing the automobile to be brought to a stop in the very path of danger. And this decision must be made and acted on in two seconds! Indeed it must be made and acted on much more quickly. There must be time left after a warning for the driver to hear it, to comprehend it, to turn and look for himself that he might know exactly the nature of the threatened danger, to act upon the danger observed either by stopping or by speeding up. Shall we say the plaintiff had one second in which to decide what to do and then to make an outcry?

■ Let the reader of these lines take out his watch and observe the second hand. *One* of these words cannot be written in a second, *two* of them cannot be spoken in a second. We think it is a mistake then to say conclusively that a woman, a passenger in the back seat of an automobile, is guilty of contributory negligence because she was mistaken in observations and decisions made in one second of time! Or two seconds! Or three seconds! A determination as to the existence vel non of contributory negligence must, under such circumstances of sudden and unexpected peril, be made from the standpoint of the actual, active situation which surrounded her in the limited time she had for observation and, thereafter, decision.*

* It is interesting to study the argument by which appellee seeks to prove plaintiff was guilty of contributory negligence. We take from the brief the several steps in that argument. Step 1. Plaintiff testified she looked to the east when the Ford entered the intersection. Step 2. If she did look, she must have seen the approaching Chevrolet. Step 3. All plaintiff needed to do was to cry out —"Here comes a car." Step 4. The driver testified he could have stopped the Ford in three feet. Hence if when the plaintiff looked as the Ford entered the

847

### Conclusion.

3. We are unable to escape the conclusion that reasonable men might differ as to whether plaintiff was guilty of contributory negligence. The issue should have been submitted to the jury. It follows that the judgment must be and it is reversed and the case remanded.

---

intersection and saw the Chevrolet she had cried out—"Here comes a car" the driver would have jammed his foot on the brake, brought the Ford to a stop within three feet and the collision would have been avoided.

But the Ford was traveling, after it entered the intersection, at the rate of approximately 10 miles an hour (from 8 to 10 was the driver's testimony). If the speed was 10 miles an hour the Ford was moving 14.6 feet per second. But appellee contends in his brief that from the point where plaintiff looked to the point of collision was 30 feet. That distance would be covered in two seconds! It takes nearly two seconds to speak the words appellee thinks plaintiff should have uttered—"Here comes a car." Before her last accent had been heard the collision would have taken place. Certainly the plaintiff was entitled to one second to decide whether the driver also saw the danger and to another second to decide whether an outcry was the right thing in the situation. And certainly the driver was entitled to one second to ascertain from what direction a car was coming, whether from west or east or north or south, and another second in which to determine how the emergency should be met and one second in which to bring his Ford to a stop.

It is going far, is it not, when only two seconds were available *for everything*, to suggest that all reasonable men would agree that in the exercise of ordinary care plaintiff would have cried out—"Here comes a car?"