GALLIEN et al. v. THOMPSON.

In re MISSOURI PAC. R. CO.

Civil Action No. 222.

District Court, W. D. Louisiana,
Lake Charles Division.

May 14, 1941.

584

Charles C. Jaubert, of Lake Charles, La., for plaintiffs.

Hudson, Potts, Bernstein & Snellings, of Monroe, La., and Pujo, Hardin & Porter, of Lake Charles, La., for defendant.

DAWKINS, District Judge.

This suit, filed in the State court, was removed to this court on the ground of diverse citizenship. The action is one sounding in damages for the alleged negligent death of the father of the plaintiffs, minors, appearing through their legal representatives. Trial by jury was waived.

The pertinent facts are as follows: The railroad company owns and operates a siding or switch track in the city of Lake Charles, Louisiana, which runs along parallel to and on the west side of the public street or highway on the lake front for a distance of several hundred feet. Freight cars in varying numbers are parked and allowed to stand upon this siding both day and night. The street, up to and within a few inches of the ends of the cross-ties, is paved or hard surfaced. Cars parked upon the siding extend a few inches over the edge of the pavement. At night, street lights burn at some of the intersections, where other streets join the highway at right angles but do not cross for the reason that the lake is immediately west of the railroad track along its entire distance.

At the time of the accident out of which the demand arises, several box cars were parked upon the siding. The deceased, O'Neill Gallien, was riding in a coupe or single seated automobile, driven by his brother, P. M. Gallien, with a woman companion, Billy Lee, sitting between them. The automobile was moving in a southerly direction and had traveled several blocks before reaching the nearest railroad car. Just before this point was reached, the automobile left the paved highway, traveled over the east rail and cross-ties and jammed its right front half into the left side of the north end of the first box car, crushing the machine and inflicting injuries upon O'Neill Gallien, who was sitting on that side, which resulted in his death. The accident happened in the early morning hours just about or just before daybreak.

The parties had left Beaumont, Texas, where they lived some time between 12:00 and 1:00 a. m. and traveled to a night club, known as the Paradise, some two or three miles east of Lake Charles, to get the social security card of the woman, who was a waitress or worker in such places. She had previously worked in the Paradise and the trip was made as an accommodation to her by P. M. Gallien, owner of the car, and the deceased went along as a companion. At this time, Billy Lee was rooming in the home of the deceased with him and his children. There is some question as to whether or not the parties, including the driver of the car, had consumed enough intoxicant to be under its effects. P. M. Gallien, the driver, testified that he was blinded by the lights of an automobile approaching in the opposite direction, pulled to the right to avoid hitting it, his car went off the pavement and ran into the end of the box car, which he had been unable to

see and did not know was there. The woman was severely shaken up in the collision and when she and the driver stepped or were helped out of the machine, witnesses testified they appeared to be under the influence of liquor and stated that the deceased or the woman had grabbed the wheel, indicating that this had something to do with causing the accident. This was denied by them as witnesses. It was also stated by the witnesses who appeared at the scene that there was an odor of liquor in the car. Both the driver and the woman testified that the deceased had gone to sleep just before the accident.

Considering the evidence both ways, I do not believe it warrants the conclusion that any of the parties had imbibed sufficiently to make it a contributing cause to the accident. It is not unreasonable to conclude that one experiencing such a mishap would be dazed to some extent, creating the impression of intoxication. If the deceased was asleep, it is also easy to understand that if he was suddenly awakened by the wheels going off the pavement onto the cross-ties and rails, he might, from excitement before gaining control of himself, have done things, even to the extent of trying to get the car under control, that one under normal conditions would not have done. If under such circumstances, he did that which a normal person, fully awake, would not have done, it is not to be charged against him as contributory negligence for the primary fault would lie elsewhere. I do not believe the evidence warrants the conclusion that the automobile was being driven at an excessive rate of speed.

The question for determination is whether or not the defendant was guilty of negligence in creating the condition out of which the accident resulted. It is true that it was permitted by the city to construct its switch track in such close proximity to the highway, and had for a long period of time pursued the practice of parking its railroad cars thereon throughout all hours of the day and night; but the danger was thought to be such that one of the civic clubs of the city interested itself in trying to have the condition corrected to the extent of taking the matter up with the railroad company, but without results. This was sometime prior to the accident. The street at that point, in fact for several blocks, was approximately thirty feet wide and there was ample room for the passing of vehicles, even at night with lights working properly on an automobile. Without interference otherwise, cars could be seen, but if it be true that at this particular time a car was approaching from the opposite direction with bright lights, for one who did not know the situation, it is easy to see that just what happened might occur. On the other hand, had the railroad company or the city maintained a guard rail of some sort along the full length of this switch track, the operator of the automobile would have had at least that much warning and protection when his car was pulled to the right because of the approach of the machine with bright lights from the other direction. There is nothing to dispute the testimony of the driver and woman companion to the effect that they were confronted with this situation other than the inference to be drawn from the disputed evidence with respect to intoxication. Even though the driver of the car was guilty of some negligence, if the defendant was likewise negligent in creating the dangerous condition, which the evidence shows existed, and the latter contributed immediately to the injury, then the deceased could not nor could his heirs be denied a right to recover unless he was also guilty of some negligence which contributed to his injury and death. It is my view that the record fails to show such negligence on his part. I also think that the circumstances were such that the defendant was bound to anticipate that an occurrence of this kind would happen, and it owed the duty to do what was necessary to warn and protect the public against the results.

The conclusion is that the plaintiffs are entitled to recover. They were all minors and dependent upon their father for support. In view of his age, earning power, etc., I believe that a recovery of $15,000 would be reasonable.

Decree in accordance with the foregoing conclusions should be presented.