The plaintiffs in the first entitled suit above are the father and mother of Ralph W. Cooper who was killed in an automobile accident on the paved highway about seven miles north of Jennings on August 28, 1940, just after seven o'clock in the morning. The parents sue for damages in the total sum of $20,295; viz., $10,000 to each of the parents for bereavement, sorrow, mental anguish and loss of society, comfort and affection on account of the death of their said son, together with the funeral expenses in the sum of $295.
In the same accident, Phillip Veronie was killed and his widow, Mrs. Edna Gay Veronie, brought a separate suit against this same defendant to recover damages for herself and her minor child in the total sum of $37,340; viz., $20,340 for herself and $17,000 for her minor child. The insurance company which carried compensation insurance for the employer of Veronie intervened in this suit and alleged that it had paid and was obligated to pay compensation to the widow and minor child of Veronie, together with medical and funeral expenses, a total of $3,505, and asked for a judgment for that amount, together with attorneys fees of $500, to be paid by preference out of any judgment which the widow and minor might recover against the defendant.
These two suits were consolidated for trial, but separate judgments were rendered in each. By agreement of counsel in both suits, they have been consolidated on appeal for all purposes. The trial judge rendered judgment in favor of Lafayette W. Cooper and his wife against the defendant for $5,000, and an additional sum of $295 in favor of Lafayette W. Cooper for the funeral expenses. In the other suit, he rendered a judgment in favor of the widow of Veronie in her behalf in the sum of $4,840, and in behalf of the minor for the sum of $3,500, with a judgment in favor of the insurance company as intervenor to be paid by preference out of this judgment the sum of $3,505, when and as paid by it for compensation, etc., plus the sum of $350.50 as attorneys fees.
The defendant took a devolutive appeal from the judgment in each case, and the Coopers filed an answer to the appeal, asking that the judgment be amended by increasing the amount awarded to them from a total of $5,000 to a total of $10,000, in addition to the allowance for funeral expenses. Mrs. Veronie, individually and as tutrix, filed an answer to the appeal, asking that the judgment be affirmed in all respects, which, of course, means that she also concurs in the judgment rendered in favor of the intervenor.
The allegations in the petition of plaintiffs in both suits are practically the same as to the manner in which the accident occurred and the specific charges of negligence leveled against the defendant. In substance, the petitions allege: That the two deceased men were riding to work on a truck of their employer, the Glaser Construction *Page 211 
Company, going in a northerly direction on paved Highway 25 leading out of Jennings, and the defendant, Garrett, was following the Glaser truck, driving his Chevrolet panel truck, with two men, his employees, riding with him in the cab on their way to work. The Glaser truck was being driven by Howard Guillory, who was taking the two deceased, as well as two or three others who were employees of the Glaser Construction Company to their work. When the Glaser truck had gotten about seven miles out of Jennings, it overtook a Plymouth car being driven by one Marshall Foy, going in the same direction on the right hand side of the road, at a speed of about 20 or 25 miles per hour. The driver of the Glaser truck pulled to his left at a safe distance behind said Plymouth car, with the view of passing same, and when the driver of the Glaser truck had gotten abreast of the Plymouth car, the said Glaser truck was struck on its left side by the Chevrolet truck driven by the defendant in attempting to pass the Plymouth and Glaser truck while they were abreast of each other, the impact of the defendant's truck on the Glaser truck causing the latter to get out of control of the driver and turn over on the left side of the road, causing the death of Cooper and Veronie.
The principal charges of negligence against Garrett are as follows: That he was driving at an excessive speed, more than 70 miles per hour; that while driving at said excessive speed, he attempted to pass the Glaser truck after it had turned to its left in order to pass the Plymouth car ahead of it; in not having his truck under proper control, and in failing to wait for the Glaser truck to get past the Plymouth car and back onto its side of the road before attempting to pass it; in running into and striking the Glaser truck while it was abreast of the Plymouth car, and while the defendant was traveling at an excessive and reckless speed on the shoulder of the road in his effort to pass said two vehicles, and in pulling back too sharply onto the highway before getting past said Glaser truck, thereby striking the Glaser truck and causing it to get out of control of the driver.
The defendant denies any negligence on his part, and alleges that the accident occurred through no fault or negligence on his part, but that the proximate cause of the accident was due to the negligence of the owner, driver and occupants of the Glaser truck, in that said truck was an old, ramshackle model A Ford truck in a bad state of repair and unfit to be operated on a public highway; that said Glaser truck was not equipped with proper brakes, nor with a muffler, horn or effective rear view mirror; that the steering mechanism was loose and defective; that the deceased, Cooper, as defendant was attempting to pass said truck, threw his arms around the neck of the driver of the Glaser truck, thereby causing him to lose control of said truck; that when he, defendant, approached from the rear of said Glaser truck, and pulled to his left to pass same, the said Glaser truck, without signal or warning, pulled to its left immediately in front of defendant's truck, thereby creating an emergency, making it impossible for defendant to keep from going on the shoulder of the road. In the alternative, and in case the court should find that the defendant was guilty of any negligence, he pleads contributory negligence on the part of the two deceased and the driver of the Glaser truck and the other occupants thereof in the respects hereinabove stated, as the proximate cause of the accident.
We have no difficulty in reaching the conclusion, as did the trial judge, that the sole and proximate cause of the accident was the negligent and reckless driving of the defendant in attempting to pass the Glaser truck at a time when it was lawfully on its left side of the highway passing the Plymouth car ahead of it. If we take the testimony of the driver of the Glaser truck and two of the occupants thereof as to the manner in which the accident occurred, the negligence of the defendant is both glaring and inexcusable. Moreover, if we disregard their testimony and accept that given by the defendant and the two employees riding with him, his negligence is still too obvious and apparent to admit of any serious doubt as to the proximate cause of this unfortunate accident.
The testimony of the driver of the Glaser truck and two other occupants of that truck, corroborated in many respects by Foy, the driver of the Plymouth car, indicates that the accident occurred in the following manner: The Plymouth car was going about 20 miles per hour on its right side of the road, and the Glaser truck was following at a speed estimated from 25 to 30 miles per hour; the Glaser truck pulled *Page 212 
to its left at a distance of 60 to 100 feet behind the Plymouth in order to pass and traveled on the left side of the pavement for a distance of 150 to 200 feet before getting abreast of the Plymouth, at which time the Plymouth was occupying most of the right traffic lane and the Glaser truck was occupying the greater part of the left traffic lane; when the Glaser truck pulled to the left to pass the car ahead of it, the defendant was from 300 to 500 feet in the rear of the Glaser truck, traveling at a speed estimated from 60 to 70 miles or more per hour; the defendant pulled to his left and traveled on the shoulder of the road at a rapid rate of speed, some of the witnesses stating that he "burnt up" the grass on the shoulder as he passed; just as the Glaser truck was abreast of the Plymouth car, the defendant's truck passed the Glaser truck and struck or "skinned" it on its left side, throwing it against the Plymouth, and causing the truck to turn over on the left side of the road, resulting in injuries to young Cooper from which he died almost instantly and injuries to Veronie from which he died an hour or so later. The defendant, after striking the Glaser truck as he attempted to pull back onto the paved road, continued on up the road for several hundred feet, stopped his truck on the side of the road, and he, together with the two men in the truck with him, walked back to the scene of the accident.
If the accident happened as these witnesses testified, there is no need to discuss the question of liability, as defendant's negligence is too obvious to require any comment. However, in justice to the defendant, it is necessary to give his version of how the accident happened. His testimony, together with that of his two employees riding with him in the truck, may be summarized as follows: He was going 40 or 45 miles per hour and the Glaser truck ahead of him was going 30 or 35 miles per hour; when he was within 50 to 60 feet of the Glaser truck, he blew his horn and pulled to the left to pass and at the same time and when he was about this distance behind the Glaser truck, the latter suddenly pulled to its left in front of him; he could not stop and pulled over onto the shoulder of the road and traveled some 150 to 200 feet on the shoulder to go around the Glaser truck ahead of him; he did not see the Plymouth car until he pulled back onto the pavement as he passed the Glaser truck, and did not feel any jolt and had no knowledge of striking the Glaser truck. After he had gotten past the Glaser truck, one of the men looked back and saw that the truck had turned over, whereupon he drove his truck some 250 to 300 yards up the road and parked it in a side entrance and walked back to the scene of the accident with the two men. He admits that he did not try to stop his truck as he was traveling on the shoulder of the road for a distance of 200 feet or so.
The evidence shows that the highway at the scene of the accident is straight for more than a mile in each direction. There was nothing to prevent the defendant from seeing the Plymouth car ahead of the Glaser truck for some distance to the rear of it, nor was there any reason why he should not have seen that the Glaser truck was traveling behind this car at the time the truck undertook to pass the car, whether defendant was only 50 or 60 feet behind the truck when he attempted to pass it, as he claims, or was several hundred feet in the rear, as plaintiffs' witnesses testified. It is difficult to understand how he could have traveled some distance behind the two vehicles ahead of him before pulling to his left to pass and then traveled some 200 feet on the shoulder almost along side these two vehicles without seeing the passenger car which the Glaser truck was passing when it was struck by defendant's truck. He was either not keeping a proper lookout, or else he was going so fast that he could not divert his vision from the path of his own car.
Again, conceding that the Glaser truck was pulled to its left by its driver when only 50 or 60 feet ahead of defendant's truck, as he claims, there is no reason why defendant should not have slowed down his truck sufficiently to permit the Glaser truck to pass the car ahead of it and get back on its side of the road. If the defendant was not going more than ten miles or so per hour faster than the Glaser truck, as he claims, there was nothing to prevent him from slowing down his truck to the speed of the truck ahead of him during the time that he was running along the shoulder of the road for some 200 feet trying to pass the truck ahead of him. The actions of the defendant in this respect indicate to us that he was determined to pass this truck ahead of him at all hazards.
While the defendant denied that he had any knowledge of his truck striking the Glaser truck as he pulled back into the road, the testimony of the occupants of the *Page 213 
Glaser truck, together with the physical signs on the right side of defendant's truck, convinces us, as it did the trial judge, that there was a sufficient impact against the Glaser truck to divert its course into the Plymouth car just to its right. The driver and an occupant of the Glaser truck testified that it did not swerve or wobble from one side of the road to the other as it was passing the car ahead but continued on beside it in a straight course until struck on the left front bumper by defendant's truck. These witnesses were in a position to feel the impact as well as see it.
There was also an effort on the part of the defendant to show that the left wheel on the Glaser truck was locked because of a defect in the brakes or steering equipment and that this locking of the brakes caused the truck to turn over. The proof does not support such a contention. As stated above, the driver and occupants of the truck stated that it continued in a straight course in passing the car until struck by defendant's truck, the driver stating that he did not even apply the brakes. Moreover, these witnesses testified that the truck, while old, showed no signs of defective brakes or steering equipment while being operated over the highway at any time before the accident. If the left brake or wheel was locked, it is clear that either the impact of defendant's truck or the impact against the Plymouth car caused the brake or wheel to become locked.
There was nothing about the Glaser truck to show that its condition was so bad as to indicate to the two deceased men or to the driver and other occupants of the truck that it was unsafe to ride in it on a public highway. While the truck was old, yet the evidence shows that it had been repaired only a few months previous to the accident and it was in such running order as to be used in carrying the men to and from work. We do not find that either the age or condition of the Glaser truck had anything to do with the accident.
Neither do we find that the deceased, Cooper, was guilty of any contributory negligence in throwing his arms around the driver of the truck. It is true, he did grab the driver around the neck after the truck had been struck and was turning over on the left side of the road. This act of the deceased was only a desperate effort on his part to save himself from what he saw to be impending death, and had nothing to do with the real cause of the accident.
Defendant's counsel also urge in this court as contributory negligence on the part of the deceased, Veronie, that, as he and other occupants of the Glaser truck were sitting with their faces to the rear, Veronie should have warned the driver of the truck in which he was riding of the fast approach of defendant and his close and dangerous proximity to the Glaser truck. We do not find this alleged contributory negligence of Veronie urged as a special plea in defendant's answer. In any event, we find nothing in the evidence to show that Veronie was aware or should have been aware of the negligent acts of the defendant in time to warn the driver of the truck as to what the defendant was about to do. He could not anticipate that the defendant would not slow down and not attempt to pass the truck before it got back onto its side of the road, nor could he anticipate that the defendant would cut sharply to his right and strike the Glaser truck in getting back onto the highway.
Rule 7 of Section 3 of Act No. 286 of 1938 requires the driver of a vehicle overtaking another vehicle going in the same direction to pass such overtaken vehicle at a safe distance to the left and not drive back to the right side of the road until safely clear of the overtaken vehicle. The driver of a vehicle desiring to pass another vehicle in front of him must also see that the way is clear on the left side of the road for him to pass safely, without interfering with the vehicle ahead, so long as it is using the road in a lawful manner. Ardoin v. Robinson et al., La.App., 176 So. 228; Greer et ux. v. Ware, La.App., 187 So. 842.
After the testimony was taken and the case submitted, but before judgment was rendered, counsel for defendant withdrew from the case and other counsel were employed. These new counsel filed motions to re-open the case for two purposes:
(1) To permit defendant to take the testimony of four additional witnesses whose evidence was alleged to be material and pertinent; that defendant learned of these witnesses after the trial of the case had closed, and his failure to call them was not due to any lack of diligence on his part. The substance of what these witnesses would testify to was set out in the motion *Page 214 
and in affidavits of these witnesses annexed to the motion. These witnesses were in the employ of the defendant and were at the scene of the accident a very short time after it occurred and while the defendant himself was there. He certainly had ample opportunity to ascertain what they knew about the case before the trial and could have easily had their attendance at court. Moreover, we do not see how their testimony could have had much bearing on the case if they had testified along the lines set out in the motion and affidavits.
They were in another car behind the defendant going in the same direction and would have testified that he was going 35 or 40 miles per hour just prior to the accident. This evidence not only would not have thrown any light on the case, but it would have contradicted the defendant's evidence to the effect that he was going 40 to 45 miles per hour. The rest of their evidence would have related to certain skid marks which they claim to have seen on the road when they reached the scene of the accident just after it happened. The purpose of this evidence was no doubt to show that the Glaser truck skidded and zig-zagged 40 or 50 feet across the road before it turned over, indicating that the brakes were locked. As already stated, if the brakes on the truck became locked, it was caused from the impact. We do not think the trial judge abused his discretion in refusing to re-open the case to hear these witnesses who were available to the defendant at the time of the trial.
(2) The other motion to re-open the case was based on the alleged error of the trial judge in refusing to permit the then counsel for defendant to recall the plaintiffs' witness, Guillory, for further cross-examination, and in order to impeach his testimony by showing that he had testified before the coroner's jury to the effect that the reason his truck turned over was because the brake on the left front wheel became locked. In passing on this motion, the trial judge says:
"* * * the record shows that one, Howard Guillory, was called by the plaintiffs as their witness in presenting their case in chief. After the direct examination of this witness had closed he was tendered to counsel for the defendant for cross examination and at the conclusion of the cross examination the witness was excused. The plaintiffs then called other witnesses and continued with the presentation of their case in chief and finally rested. On the following day during the presentation of the case on the part of the defendant, this witness, Howard Guillory, was recalled by counsel for the defendant for further cross examination, whereupon counsel for the plaintiffs objected on the ground that this witness had been cross examined before the plaintiff had closed their case in chief and that after which time counsel for the defendant was without right to recall this witness for further cross examination. This Court sustained the objection but did permit counsel, if he so desired, to call this witness as his own witness. It does not appear that such proposed re-cross examination was desired because of any newly discovered matters or through any oversight or inadvertence on the part of counsel for the defendant in the original cross examination, but was apparently on matters with which counsel for the defendant was familiar at the time of the original cross examination.
"In the opinion of this Court, after a witness for the plaintiff has been examined in chief and then cross examined by counsel for the defendant and excused, and after the plaintiff has closed his case in chief and rested, counsel for the defendant then has no right as a matter of law to recall a plaintiff's witness for further cross examination, especially in the absence of any showing of newly discovered matters or in the absence of some oversight or inadvertence on the part of counsel for the defendant in the original cross examination. In the opinion of this Court such right, at most, lies within the sound discretion of the trial Court. Under the circumstances existing at the time of this ruling this Court does not believe that its discretion was abused and will not, therefore, disturb its original ruling."
We do not think the trial judge abused his discretion in ruling as he did. Particularly is this true, as the record shows that this same witness was recalled by plaintiffs' counsel after the judge refused defense counsel the right to recall him for cross-examination. The witness was asked about the locking of the brakes after he was recalled by the plaintiffs' counsel and testified on that point denying that the brakes locked. If counsel for the defendant wanted to interrogate him further or impeach him on that testimony, he certainly *Page 215 
had the opportunity of doing so. We see no good reason to remand the case.
Young Cooper was about nineteen years of age at the time of his death. He was a high school graduate and had good habits and a very promising future. No claim is made that he was helping to support his parents, although he was employed as a bookkeeper, making $80 per month. In the recent case of Keowen et al. v. Amite Sand Gravel Co. et al., 4 So.2d 79, we approved an award of $10,000 to the parents of a nineteen year old boy who was killed by a truck. The young boy in that case was helping to support his parents and suffered considerable pain before his death. The Cooper boy was killed almost instantly. In order to bring the award in this case a little more in line with the awards in similar cases, we have decided to increase it from a total of $5,000 to a total of $8,000. We will enter the decree in the Cooper case here, and enter a decree in the other case separately in order that both records may be completed.
For the reasons herein assigned, it is ordered that the judgment in the case of Lafayette W. Cooper and wife v. Henry C. Garrett be and the same is hereby amended by increasing the amount of the award from a total of $5,000 ($2,500 to each of said plaintiffs) to a total of $8,000 ($4,000 to each of said plaintiffs); and in all other respects, the said judgment is hereby affirmed at defendant's cost in both courts.