On May 26th 1939, Alexander L. Redden received personal injuries in an automobile accident, which occurred on the west bank of the Mississippi River in Jefferson Parish on the Old Spanish Trail highway, when a Plymouth automobile driven by Dr. W. Jay Elmer, in which Redden was riding as a passenger, collided head-on with a Ford automobile owned and operated by Joseph A. Blythe. Charging that the accident was attributable solely to the negligence of Blythe, who (allegedly) was driving his car while in an intoxicated condition, at an excessive rate of speed, out of control and was zigzagging from side to side on the highway (which was wet), Redden brought this suit in the Civil District Court against Blythe and his liability insurance carrier, New Amsterdam Casualty Company, seeking to recover damages in the sum of $8,152.
In due course, the defendants filed their answer to plaintiff's petition in which they admitted the happening of the accident but denied that Blythe was guilty of negligence in any respect. They averred that, while Blythe was proceeding along the highway at a moderate rate of speed on his right and proper side of the road, the automobile operated by Dr. Elmer, which was travelling in the opposite direction, in attempting to pass a truck, which was proceeding ahead of him, pulled out from his side of the highway into the lane designated for traffic coming from the opposite direction without taking the precaution of ascertaining that Blythe's car was approaching at that time and ran directly into the latter's automobile. In the alternative, defendants pleaded that, in the event it be determined that Blythe was at fault in any particular, then plaintiff's recovery should be barred because he was guilty of contributory negligence in talking to Dr. Elmer about the speed at which people drive and thereby caused Dr. Elmer to watch the speedometer instead of the road ahead of him.
After a trial in the district court on the foregoing issues, judgment was rendered in plaintiff's favor for the sum of $2,625. Defendants have appealed from the adverse decision and plaintiffs have answered the appeal praying for an increase in the award of the district judge.
The foregoing statement of the pleadings in the case exhibits that the issues presented for review in this court are solely questions of fact. Hence, we immediately direct our attention to the testimony submitted at the trial for the purpose of determining whether the result reached by the trial judge is correct.
The scene of the accident is the Old Spanish Trail (the River Road) which is a two-way paved highway situated on the west bank of the Mississippi River. The Plymouth automobile, in which plaintiff was a passenger, was being operated from the Huey P. Long bridge towards Luling, Louisiana and, at the time of the accident, had progressed about a half mile from the bridge. The highway is approximately 21 feet wide and extends in a straight line from the Huey P. Long bridge for about one mile, where there is a wide "S" curve in the roadway. The accident occurred at between 5:00 and 5:30 p.m. on May 26th 1939, when the Elmer car and the Blythe car, which was travelling from Luling in the opposite direction from the Elmer car, collided head-on at a point variously designated at between one-half and three-quarters of a mile from the Huey P. Long bridge and approximately one-half to one-quarter of a mile from the curve in the road above mentioned. It was drizzling at the time and the roadway was wet and slippery. The point of contact, where the cars met and immediately came to rest, was on the left hand or the Elmer car's wrong side of the road and, of course, the right or proper side of the Blythe car. After the collision, the front wheels of both cars were pointed towards a ditch which abuts that side of the road. Blythe was alone in his automobile and Dr. Elmer had, as his passengers, the plaintiff who occupied the front seat next to the driver, and Earl E. Lucia, who was riding in the rear seat leaning forward with his elbows on the rear of the front seat. In support of his charge that the collision resulted from the negligence of Blythe, plaintiff submitted, in addition to his own evidence, the testimony of Dr. Elmer and one Alfred W. Bonneval, allegedly a disinterested witness, who was driving a truck which was travelling ahead of the Elmer car. Mr. Lucia, the other passenger in the Elmer car, did not testify at the trial and no explanation is given for his absence.
The substance of the testimony given by Dr. Elmer is as follows: That he, Lucia and the plaintiff were going on a fishing trip to Grand Isle; that they were driving slowly at a speed of between 30 and 35 miles per hour; that, just prior to the *Page 730 
accident, they were discussing the speed at which they were travelling and they agreed between themselves that they would go slow as it would be too late to fish that evening when they reached Grand Isle; that, while they were travelling along the highway at this slow rate of speed and had reached a point about 300 feet from the curve in the road, he (Elmer) noticed a truck ahead of his car going in the same direction; that this truck was about to enter the curve in the road and that, just at that time, he saw the Blythe car coming around the curve at a high rate of speed, which he estimates to be at least 50 miles per hour, zigzagging. He further states that, after the Blythe car barely missed striking the truck which was about to enter the curve, it continued forward, apparently out of control, zigzagging from the right over to the left and again over to the right side of the road; that, after the Blythe car had completed the second zigzag and was on his (Elmer's) side of the road and bearing down upon his car, he swerved his car, in the emergency thus created, over to the left in an attempt to avoid the collision; that, notwithstanding this, the Blythe car immediately changed its course and swerved to the right and that the front of the two cars collided near the shoulder of the left hand side of the roadway. Dr. Elmer says that he was unhurt in the accident; that he got out of his car and extricated Mr. Redden and Mr. Lucia from the crash as both of them had been rendered unconscious as a consequence of the impact.
Redden, the plaintiff, corroborates the testimony of Dr. Elmer except in one particular. Redden says that the cars collided on the right, or Elmer's proper side of the road, and that the two automobiles were not over the center line of the roadway — whereas, Dr. Elmer admits that the cars came to rest on or near the shoulder of the left hand (or his wrong) side of the highway.
The evidence of Bonneval, who testified on behalf of plaintiff, is likewise corroborative of Dr. Elmer's statement that Blythe was driving recklessly; that his car was out of control and that he was zigzagging all over the road. He says that he was driving an oil truck towards Avondale, Louisiana, which is in the direction of Luling; that he was about 150 feet from the curve in the road when he noticed the Blythe car coming around the bend from the opposite direction at a speed of between 45 and 50 miles per hour and apparently out of control; that, becoming apprehensive in view of the emergency created by Blythe, he slowed his speed down to about 5 miles per hour and pulled over on the right shoulder of the road; that the Blythe car sped on and barely missed him when it passed; that, a few seconds after it had passed, he heard a loud crash and that, looking in his rear view mirror, he saw the Blythe car engaged in collision with Dr. Elmer's automobile. He further relates that he did not stop and go back to the scene of the accident because he had a load of gasoline and was anxious to return it to the oil concern by which he was employed.
In support of his charge that Blythe was in an intoxicated condition at the time of the accident, plaintiff submitted evidence showing that, after the accident the inside of the Blythe car smelled strongly of liquor. Blythe admits that he had two bottles of liquor in his car and says that one of them broke as a result of the impact. However, he vigorously denied that he had been drinking or that he is a drinking man, and he produced medical and other evidence to corroborate his testimony on that score. We think that his evidence clearly disproves plaintiff's charge which is based solely on the circumstance that the odor of whiskey emanated from his car.
Blythe was the only eye-witness of the defendants. His version of the accident is as follows: That he had been to Thibodaux, Louisiana and was returning to New Orleans; that, while in Thibodaux, he had purchased two bottles of whiskey, some eggs and other provisions, in preparation for a bridge and poker party which he was giving at his home that night; that he had not been drinking and had full control of his car which he was driving at a reasonable rate of speed of about 40 miles per hour; that the curve in the road (which plaintiff and his witnesses say is a very dangerous one) is a long "S" curve that can be negotiated without any difficulty at 40 miles per hour, even on a wet road; that, when he completed this curve and was proceeding towards the Huey P. Long bridge (having reached the straight part of the road) he observed a truck and an automobile coming from the opposite direction; that the truck was on its right or proper side of the road and the automobile was running abreast with the truck in his (Blythe's) lane; that it appeared to him that the automobile had overtaken the *Page 731 
truck and was attempting to pass it; that, when he saw the two vehicles approaching him, they were approximately 500 or 600 feet from his car; that he unconsciously retarded the speed of his car so that the automobile could either pull ahead of the truck or drop behind it and thus regain its proper side of the road; that, as the oncoming vehicles got nearer and were a little over 100 feet from his car, he suddenly realized that the driver of the automobile was unaware of the presence of his (Blythe's) car and that an emergency had been created; that, in the situation thus presented, he immediately slowed down and ran the right wheels of his car on the shoulder of the road; that he could not apply his brakes because the roadway was wet and he feared that, if he did, he would skid over to the left hand side of the road into the truck and that, by pulling on to the shoulder of the road he did everything that he could, under the circumstances, to prevent a collision.
It will be seen from the foregoing recitation of the evidence adduced at the trial that the testimony of plaintiff and his witnesses, with respect to the movements of the vehicles just prior to the occurrence, is wholly irreconcilable with the statement given by the defendant, Blythe. In these circumstances, the trial judge was faced with the necessity of accepting as true one of the two versions and of rejecting the other. It is evident, from his judgment, that he believed the plaintiff and his witnesses. In view of the utterly conflicting statements given by the participants in the collision, it would be most difficult for us to resolve that the trial judge was wrong in holding that the story related by plaintiff and his witnesses as to the cause of the accident preponderates over Blythe's statement — for, while it is our duty to decide the case on the facts as well as the law, the jurisprudence is well established that we will not reverse the district court on questions of fact unless we are convinced that the judge has fallen into plain or manifest error. In fine, the holding of the trial judge in factual matters is entitled to great weight, inasmuch as he has the benefit of seeing and hearing the witnesses give their testimony and of observing their demeanor on the stand.
Were it not for this, we would be prompted to reject the plaintiff's version of this accident because a reading of the testimony in the record has left us with the distinct impression that Blythe has offered a more logical and reasonable explanation with respect to the cause of the occurrence, which coincides with the physical facts of the case, than the story portrayed by plaintiff and his witnesses. We find the testimony of Mr. Blythe to be clear, responsive and well stated, whereas the evidence of plaintiff and his witnesses reveals many exaggerations and inaccuracies. Be this as it may, it would serve no useful purpose to point out in detail the reasons which make us doubt the full truth of the statements given by plaintiff and his witnesses because we are not wholly convinced that the trial judge was wrong in giving credence to their testimony.
Moreover, even if we accepted Mr. Blythe's version of the accident as genuine, it would not change the result reached by the trial court because we are of the opinion that the statement given by him exhibits that he was not entirely free from blame.
In testifying with respect to the situation confronting him just prior to the accident, Blythe said that, when he first noticed the truck and the automobile approaching him, he was 500 or 600 feet away and that, while he unconsciously slowed down, he was not in a position to apply his brakes at the time he foresaw the possibility of an accident because the roadway was too wet. It seems to us that it was imprudent for him, while travelling on a wet road, not to have slowed down immediately to such a speed that he could have applied his brakes with safety. It will not do for him to say that he elected to wait until an emergency was created and that he could not apply all effective means at his command because it was too late. Caution demanded otherwise. His failure to act when he had time to act must be regarded as negligence which had causal connection with the ensuing accident.
The plea of defendants that Redden was guilty of contributory negligence is wholly without substance on the facts found by the trial judge. On the other hand, even though Blythe's version of the occurrence be accepted, we do not think that the plea of contributory negligence can be sustained. There is no evidence to show that Redden distracted Dr. Elmer's attention from the road, as charged by defendants in their answer. On the contrary, it appears that Redden did about all that any passenger in an automobile could *Page 732 
do upon being confronted with the imminence of a collision. He told the driver, Dr. Elmer, "watch him, watch him". Surely, he could not be expected to take over the wheel and thus interfere with the control exercised by the driver.
Finding that the defendants are responsible for the consequences of the collision leaves only for consideration the question of quantum of damages. The district court allowed $2,625 which defendants say is exorbitant. Conversely, plaintiff complains that the award is inadequate.
Dr. J. Kelly Stone, plaintiff's physician (and also the doctor for the defendant insurance company), describes plaintiff's injuries to be general contusions and bruises; a slight laceration over the right forehead; considerable tenderness at about the eighth and ninth ribs near the costal cartilages; multiple lacerations about the left thumb and fingers and a severe sprain and marked subcutaneous hemorrhage about the ankle joint.
Plaintiff was rendered unconscious as the result of the impact suffering a slight concussion of the brain. He was taken to the Baptist Hospital, where he remained under treatment of Dr. Stone for a period of 18 days, according to his testimony. (Dr. Stone says he was in the hospital for 10 days). Thereafter, (plaintiff says) he was confined to bed at his home for a period of two months. X-Rays were taken of his injuries on two occasions. These X-Rays were negative as to fractures. On August 8th 1939, Dr. Stone wrote to the defendant insurance company that plaintiff had returned to work and that he would be partially disabled for at least three or four weeks from that time.
The main injury suffered by plaintiff was to his ankle which was the cause of his being confined for some time. As to that injury, Dr. Stone said, when asked whether it was an ordinary sprain or something more serious, "It was more serious. He had, I think, a rupture of the ligaments about his ankle and I made that diagnosis after ruling out a fracture. I thought at first he had a fracture."
It was further shown at the trial that, although plaintiff's left thumb and third finger were not broken, there was a considerable contusion to these members and that, at the present date, he is unable to completely flex the joints. However, the limitation in them, according to Dr. Stone, is slight and does not exceed 10%. Plaintiff testified that his injuries were very painful, particularly the injury to his ankle which, he says, still swells and pains him during wet weather.
Opposing counsel have submitted numerous authorities respecting the quantum of damages in cases of this type. The awards given in the cases cited by counsel disclose, as we have oftimes observed, that there does not exist in this State a uniform standard to be used in the fixing of compensatory damages for personal injuries. The decisions on sprained and broken ankles show that the quantum will vary anywhere from $500 to $1,500. In some cases, less than $1,500 has been given for fractured ankles and other fractured members of the body. On the whole, the best that can be said is that the quantum in each case must be governed by the type of injury and the amount of disability it produces.
In the case at bar, it appears to us that plaintiff's injuries, while neither serious nor permanent (except for the slight limitation now existing in his thumb and finger), were extensive and painful and caused him to be disabled for over three months. Taking all circumstances into consideration, we feel that an allowance to plaintiff of $1,500 will fully compensate him for the effects of the accident.
In addition to this, plaintiff is entitled to recover his doctor's bill amounting to $125; $80 for his hospital bill; $50 for X-Ray pictures and special tests and $20 for medication, or a total of $275.
For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof to $1,775 and, as thus amended, is affirmed. Defendants are to pay the costs incurred in the district court and plaintiff is to pay the costs of this appeal.
Amended and affirmed. *Page 733