144 So.2d 574 (1962)
Mrs. Rose Thibodeaux BREAUX, Individually, et al.
v.
Philip FLITHERS and American Universal Insurance Company.
No. 697.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1962.
*575 Pertuit, Gemeinhardt, Johannesen & Roberts, by James R. Pertuit, New Orleans, for appellant.
Byrnes & Wallace, by Bernard Fonseca, New Orleans, for appellee Philip Flithers.
Faris, Leake & Emmett, by Robert E. Leake, Jr., New Orleans, for appellee American Universal Ins. Co.
Before TATE, THOMPSON and BAILES, Judges.
JULIAN E. BAILES, Judge.
This action in tort was instituted by plaintiff, Mrs. Rose Thibodeaux Breaux, individually and in her representative capacity as duly qualified natural tutrix of her minor daughter, Sheryl Ann Breaux, against defendants, Philip Flithers and American Universal Insurance Company, to recover damages, both special and general, for injuries incurred by the plaintiff and her daughter, and for the wrongful death of plaintiff's other daughter, Tessie Theresa Breaux.
Defendant, Philip Flithers, was the driver of the vehicle which collided with the automobile in which plaintiff and her daughters were passengers and which was driven by plaintiff's husband, Nolan J. Breaux, who was killed in this accident. The other defendant, American Universal Insurance Company, was the public liability insurer of Nolan J. Breaux.
The accident that gave rise to this action occurred at about 6:45 o'clock on the evening of July 7, 1956, in St. Charles Parish on U. S. Highway 90, about one and one-half miles east of Des Allemands. The Breaux automobile was traveling east, and the vehicle driven by defendant, Flithers, was traveling west.
The evidence shows that the collision between these two vehicles occurred at the western end of a long curve extending from a northerly to a westerly direction. Prior to the accident, the Breaux vehicle was traveling at about 50 miles per hour and the one driven by Flithers at a high rate of speed, his exact rate of speed being undetermined. As the Flithers vehicle came around this curve and when approximately 1200 feet away, it was observed by both the plaintiff and her husband, Mr. Breaux, encroaching in the east-bound traffic lane, about three feet south of the center line. At some time after seeing the Flithers vehicle *576 in his lane, Mr. Breaux put on his brakes to slow the automobile and pulled to his right onto the shoulder of the highway. Apparently because of prior rainfall, the shoulder of the road was soft. Upon taking to the shoulder of the road, the Breaux vehicle began to slip. Believing that her husband was going to drive back onto the highway into the path of the oncoming Flithers vehicle, Mrs. Breaux seized, or attempted to seize, the steering wheel to steer it from the paved highway. Her husband thereupon struggled with his wife to free her grasp of the steering wheel, and as soon as he regained control of it, the impact occurred between his automobile and that of Flithers. The State Trooper, who investigated the accident, located the point of impact about six feet south of the center line of the highway, which was in Breaux's traffic lane.
Defendant, Flithers, who was seriously injured in the accident, admitted having drunk four or five draught beers prior to the accident. He was traveling alone, and he disclaims any recollection of the details of his driving immediately prior to the accident. Besides the fatal injuries to Mr. Breaux and his daughter, Tessie Theresa, Mrs. Breaux and the other daughter, Sheryl Ann Breaux, were seriously injured.
There was only one disinterested eye witness to the accident. He was a passenger in an automobile proceeding east in rear of the Breaux vehicle. He testified that at the moment of impact the automobile being driven by Flithers was in the middle of the highway, and the Breaux automobile was on the side of the road just off the pavement, and that at the time of the collision, he saw steam rise from the two vehicles. He was positive that the collision occurred in the eastbound lane of traffic. This was the limit of his knowledge of the facts of the accident. The only other eye witness to testify to the facts of the collision was Mrs. Breaux.
It was stipulated that the Breaux vehicle traveled a distance of 60 feet on the shoulder of the highway before it collided with the Flithers vehicle.
The trial court rendered judgment against Flithers and in favor of the minor, Sheryl Ann Breaux, in the amount of $4,000. All demands of Mrs. Breaux were rejected, and the suit against defendant, American Universal Insurance Company, was dismissed.
The judge a quo, in his reasons for judgments, said:
"The evidence points out that Breaux observed the encroachment of Flithers in his lane of travel and that he took evasive action to avoid the accident. The evidence further satisfies this Court that the evasive action of Breaux's was proper under the circumstances, as was his battle to keep the automobile from slipping, and being faced with an emergency his actions were anything but negligent. Woodward [Woodard] v. American Indemnity Co., [La.App.] 118 So.2d 284; Foster v. Fidelity Mutual Ins. Co., [La. App.] 118 So.2d 139; Dave [Dane] v. Canal Ins. Co., [La.App.] 116 So.2d 359; and others. There was no negligence on the part of Nolan J. Breaux.
"However, negligence so grave, and so uncalled for as to defy explanation was committed by plaintiff Rose Thibodeaux Breaux: By her own testimony a driver since 1951, she saw her husband in an emergency situation under most trying conditions for maintaining proper control of the vehicle, and, with deliberation and thought as she so testified, she grabbed the steering wheel. The imponderables that always surround an accident can safely be resolved in this instance by saying that nothing worse could have happened and the Court finds her negligence a proximate cause of the accident.
"Accordingly, the claims of Rose Thibodeaux Breaux are dismissed."
*577 Plaintiff prosecutes this appeal. Defendant, Philip Flithers, did not appeal from the judgment and made no appearance in this court.
Plaintiff contends, first, that the trial court erred in not holding Breaux guilty of negligence in driving his automobile from the shoulder of the highway back in the highway and into the path of the Flithers vehicle. Secondly, that the trial court erred in holding that Mrs. Breaux was guilty of negligence [that was a proximate cause of the accident] in attempting to steer [by attempting to seize the steering wheel from her husband] the automobile away from the highway and from the path of the Flithers vehicle.
The trial court held Flithers guilty of negligence that was a proximate cause of the accident. This holding is correct, because Flithers was operating his automobile in violation of that all-important section of the Revised Statutes regulating the use and operation of motor vehicles on the highways of this State, which provides:
"LSA-R.S. 32:232
"Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other for at least two hundred feet before meeting, one half of the main traveled portion of the highway."
Furthermore, Flithers has not appealed from the judgment of the trial court, and the matter is forever closed as to him and his liability.
Passing now to the first assignment of error made by the plaintiff, as paraphrased, supra, we must rely on the testimony of the plaintiff alone. She testified that it was raining at the time, that just prior to the collision her husband, Mr. Breaux, was driving at a speed of about 35 miles per hour and that she urged him to drive faster; and in compliance with her request, he increased the speed to about 50 miles per hour. The plaintiff, up to the point of seeing the Flithers vehicle in the eastbound traffic lane, undoubtedly, considered this a safe speed under the circumstances. Mrs. Breaux further testified that, upon seeing the Flithers automobile in their traffic lane, she told her husband to watch the car; that at the time the Flithers vehicle was about four blocks away, that her husband applied the brakes.
At this time it should be noted that apparently if the Flithers car was that distance from the Breaux vehicle, Breaux did not immediately leave the paved highway. This conclusion is reached because it was stipulated that the Breaux vehicle traveled a distance of 60 feet on the shoulder of the highway before re-entering and colliding with the Flithers vehicle. At any rate, Mrs. Breaux testified that her husband took the side of the road with only the right wheels off the pavement, and that the automobile started slipping. When the vehicle regained the highway, Mrs. Breaux testified that she got excited and cut the [steering] wheel of the automobile and tried to get it out of the way. A struggle ensued for possession of the steering wheel, with the husband regaining control of the wheel, and at that point the collision occurred.
We, of course, are deprived of the testimony of Mr. Breaux, as he was killed in the accident. From the testimony of the plaintiff, it is impossible to get a clear picture of exactly what did occur, because of the conflicting statements in her testimony. We feel it pertinent to quote the following from the plaintiff's brief:
"During the trial Mrs. Breaux testified as to the accident; however, her testimony was admittedly confusing or confused and mostly incoherent and not responsive. This trial was recognized to be an ordeal for Mrs. Breaux, by Judge Bradley and all counsel; because of the nature of the case and the temperment [sic] of Mrs. Breaux."
There is no testimony in the record to fix the distance between the vehicles at the time Mr. Breaux applied his brakes or the *578 distance between the vehicles when he drove his automobile partly onto the shoulder of the highway.
Under the facts as we can determine them from the record, we feel it is correct to say that Mr. Breaux was faced with a sudden emergency and that he sought to do what was necessary to evade and elude the oncoming Flithers automobile.
While Mrs. Breaux placed the distance between the two automobiles, at the time she first noticed the Flithers automobile on her side of the highway, at four blocks, some interval of time elapsed between that point and the time she admonished her husband to "watch that car", and additionally, some interval of time transpired for him to evaluate the situation. During all of this time, the two vehicles, undoubtedly, were approaching each other at a combined rate of speed in excess of 160 feet per second.
Plaintiff contends that Mr. Breaux was negligent in driving at a speed of 50 miles per hour while it was raining. As stated before, under the circumstances existing prior to the sequence of events that developed that the speed of 50 miles per hour was not excessive, as the plaintiff urged Mr. Breaux to increase his speed and she did not protest the speed of 50 miles per hour, we find no negligence on the part of Mr. Breaux in that respect.
Next, plaintiff contends that Flithers' negligence in operating his automobile in the eastbound traffic lane was warning to Breaux. More must be shown by plaintiff to charge Breaux with actionable negligence than the mere appearance of Flithers in his traffic lane.
The principle of law is well grounded in our jurisprudence that says that a motorist traveling upon the right side of a highway has the right to assume that any one who pulls over into his lane will yield the right-of-way and return to the proper lane in sufficient time to avoid a collision. See LSA-R.S. 32:232.
That a motorist has the right to assume that one traveling on the wrong side will yield the right-of-way in sufficient time is discussed and reviewed in Wood v. Manufacturing Casualty Insurance Co., La.App., 107 So.2d 309, 314.
Plaintiff also contends that Breaux was negligent and defendant insurance company is liable therefor, because Breaux saw the Flithers vehicle in his eastbound lane when Flithers was at least four blocks away from his vehicle. In advancing argument on this point, plaintiff contends that that was sufficient distance for Breaux to bring his vehicle under safe and proper control to clear Flithers vehicle if Breaux was driving in a manner and degree of care necessitated by the road and weather conditions. Plaintiff's premise for this argument is contrary to our findings, as stated supra. We find that Breaux did have his automobile under control prior to the time he drove partly on the shoulder of the highway. Furthermore, plaintiff makes no allowance for the principle of law supported by Wood v. Manufacturers Casualty Insurance Co., supra, and the authorities cited therein.
On this point, plaintiff seeks to invoke the doctrine of last clear chance, as enunciated in Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195; and Chouest v. Remond, La.App., 81 So.2d 568. Up to the point that Mr. Breaux determined that the Flithers automobile was not going to return to its right side of the highway, he had the right to assume that it would so return. There was no showing whatever of any fact or action that should have put Mr. Breaux on notice that Flithers was not going to yield him his half of the highway. After Breaux determined that some evasive action was required to avert an accident, he did all that he could to avoid contact with the Flithers automobile. He did not have the last clear chance to avoid the collision.
Plaintiff next contends that when Breaux entered on the shoulder of the highway, he was traveling at too great a speed, *579 and because of his excessive speed, the car started to "slipping", and cites the case of Redden v. Blythe et al., La.App., 12 So.2d 728. As stated, supra, there was no showing of any unusual action or maneuver of the Flithers automobile to indicate to Breaux that Flithers was not going to return to his proper side of the highway, whereas in the cited case of Redden v. Blythe, Blythe's vehicle was obviously out of control and going from one side of the highway to the other, and immediately prior to the collision of the Blythe automobile with that in which plaintiff, Redden, was riding, it had narrowly missed a truck some distance in front of Redden. Redden v. Blythe, supra, is not controlling on this point.
We have no testimony as to the speed of the Breaux vehicle at the time it entered on the shoulder of the highway and began to slip, or slide, but it is reasonable to assume that it was somewhat slower than 50 miles per hour, because the plaintiff testified that her husband put on his brakes after she told him "watch that car". There is no showing that Mr. Breaux contributed anything towards the creation of the emergency that developed by Flithers not timely returning to his lane of travel.
Mr. Breaux was confronted with an emergency and acted as a reasonably prudent man would have reacted to the situation under those circumstances. He drove onto the shoulder of the road, whereupon, for some reason not clearly shown but apparently because of soft or wet ground, his automobile began to slip, causing him to struggle to control its direction. See: Dane v. Canal Insurance Company et al., 240 La. 1038; 126 So.2d 355. We find no error on this score.
Passing now to the question of contributory negligence vel non on the part of the plaintiff in intervening in the operation of the vehicle in which she was a passenger, we quote the following from her brief:
"The obvious answer to justify Mrs. Breaux's action is that she instinctively surmised that her husband had lost control of his faculties.
"Here the situation as it existed put Mrs. Breaux, an experienced driver, beside the driver of this vehicle, Breaux, who had manifestly become panic-stricken, and directed his vehicle into the path of the oncoming Flithers vehicle.
"The natural instinct of self-preservation dictates that one faced with certain destructions, and who possesses knowledge and experience to avert the catastrophe, will and must act in avoidance thereof, instinctively, impulsively or decisively.
"No judge may interpose stare decises for the God-given quality of a mother's protective instinct for herself, her husband and her offspring."
We do not find that the evidence justifies the conclusions of facts stated in the quoted portion of plaintiff's brief. We are unable to conclude from any part of the testimony of the plaintiff that her husband had lost control of his faculties, or had become panic-stricken. We find more in her actions than in her husband's actions to conclude that she, the plaintiff, lost control of her faculties and became panic-stricken.
This was a most unusual type of action on the part of a passenger, and if the dearth of cases involving such a question is any indication of the frequency of its occurrence, it is then correct to say that it occurs most infrequently. Plaintiff has cited us no case to support her intervention in the operation of the vehicle.
Our research discloses but three cases on the general subject. In the case of Gallien v. Thompson (1941), 39 F.Supp. 583, affirmed in 127 F.2d 664, the district court said on page 585:
"[1, 2] * * * If the deceased was asleep, it is also easy to understand that if he was suddenly awakened by the wheels going off the pavement onto the cross-ties and rails, he might, from *580 excitement before gaining control of himself, have done things, even to the extent of trying to get the car under control, that one under normal conditions would not have done. If under such circumstances, he did that which a normal person, fully awake, would not have done, it is not to be charged against him as contributory negligence for the primary fault would lie elsewhere. * * *"
In Kuper v. Betzer (1940) 115 F.2d 842, the court, on page 846, said:
"[8] Let the reader of these lines take out his watch and observe the second hand. One of these words cannot be written in a second, two of them cannot be spoken in a second. We think it is a mistake then to say conclusively that a woman, a passenger in the back seat of an automobile, is guilty of contributory negligence because she was mistaken in observations and decisions made in one second of time! Or two seconds! Or three seconds! A determination as to the existence vel non of contributory negligence must, under such circumstances of sudden and unexpected peril, be made from the standpoint of the actual, active situation which surrounded her in the limited time she had for observation and, thereafter, decision."
Also see: Cooper v. Garrett (La.App.) 6 So.2d 209.
As we appreciate and evaluate the testimony in instant case, there is nothing to indicate that Breaux had suddenly become incompetent to cope with the predicament in which he found himself, but he certainly needed to be unimpeded. Plaintiff, seated on the right front of the automobile, was ill-positioned to direct its movements.
Even though we find that plaintiff was guilty of negligence in seizing the steering wheel, that, in itself, is not sufficient to deny her recovery. The defendants must show that this negligence on her part was a proximate cause of the accident. It cannot be reasonably concluded from the testimony of the plaintiff nor that of any other of the witnesses who testified. It was shown to our satisfaction that the point of impact of the vehicles was six feet south of the center line of the highway, which places it that distance over in Breaux's lane. The only witness to describe the interference in the steering of the automobile or the attempt to seize the steering wheel was the plaintiff, herself, and from her description of the rapidity of the sequence of events; that is, her grabbing for the wheel, her husband pushing her away, and then the impact of the vehicles, we gain the gross impression that it occurred almost as quickly as one can say one, two, three. The burden rests on defendant, Flithers, to prove that this negligence of the plaintiff was a proximate cause of the accident, and this he has not done. Of course, the defendant, American Universal Insurance Company, is not concerned with this negligence, or the consequence thereof, because we find, as did the trial court, no negligence on the part of Mr. Breaux.
Plaintiff has made no complaint of the quantum of damages awarded by the trial court for the injuries to the minor, Sheryl Ann, in the amount of $4,000; therefore, the adequacy of this award for Sheryl Ann's physical pain and suffering and mental pain and anguish and for permanent disability is not before us.
Turning now to the quantum of damages to be awarded the plaintiff, individually, we find that she has made claim for damages for the loss of love and affection through the death of her daughter, Tessie Theresa, who was 10 years of age at the time, and also for certain personal injuries. The plaintiff incurred a long, oblique fracture of the distal shaft of the left femur extending into the knee joint. She was first hospitalized in Raceland on the day of the accident, then on July 15, 1956, transferred to Mercy Hospital in New Orleans. She wore a long leg cast from July 7, 1956, to September 20, 1956, at which time a short *581 cast was reapplied and remained until some time in November, 1956. She was a patient in the hospital for a period of 43 days. On January 25, 1960, her physician determined that she had a permanent disability of 20 per cent loss of the use of her left leg; however, he felt that she could do her housework in spite of this disability.
We feel that plaintiff is entitled to be awarded the sum of $10,000 for the loss of love, affection and companionship of her daughter, Tessie Theresa. See: Fullilove v. U. S. Casualty Company of New York (La.App.), 129 So.2d 816; and Himes v. Avinger (La.App.), 85 So.2d 304.
Considering the length of time plaintiff was in the hospital, the long period of time in which she was required to wear the leg cast, the pain and discomfort and inconvenience attendant in doing so, and the degree of her permanent disability, we feel that she is entitled to be awarded the sum of $10,000 for physical pain and suffering and mental pain and anguish.
As no proof was offered of the amount of any special damages, no award can be made for this.
For the reasons assigned, the judgment of the trial court in favor of the plaintiff and against the defendant, Philip Flithers, awarding the plaintiff, for the use and benefit of the minor, Sheryl Ann Breaux, the sum of $4,000, together with legal interest thereon from judicial demand until paid, be and the same is affirmed.
It is further ordered that the judgment of the trial court rejecting the claims of the plaintiff, individually, be reversed, and there is judgment herein in favor of plaintiff, and against the defendant, Philip Flithers, in the full sum of $20,000, together with legal interest thereon from judicial demand until paid.
Defendant, Philip Flithers, is cast for all costs of court.
Judgment affirmed in part, reversed in part, and rendered.